UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELO S.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00072 EAW

# **INTRODUCTION**

Represented by counsel, Plaintiff Angelo S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 11), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on March 13, 2018. (Dkt. 5 at 115).[1] In his applications, Plaintiff alleged disability beginning March 5, 2017, due to epilepsy. (*Id.* at 98). Plaintiff's applications were initially denied on May 10, 2018. (*Id.* at 119-34). A hearing was held before administrative law judge ("ALJ") David F. Neumann on October 7, 2019, and on April 7, 2020. (*Id.* at 40-51, 53-75). On April 24, 2020, the ALJ issued an unfavorable decision. (*Id.* at 13-25). Plaintiff requested Appeals Council review; his request was denied on November 3, 2020. (*Id.* at 7-12).

Plaintiff appealed the denial of his claim to the United States District Court for the Western District of New York, and on April 21, 2022, the parties stipulated to remand the matter to the Commissioner for further proceedings. (*Id.* at 661-63). The Appeals Council ordered a new hearing on August 24, 2022. (*Id.* at 654-60). A second hearing was held before the ALJ on September 11, 2023. (*Id.* at 607-30). On September 25, 2023, the ALJ issued an unfavorable decision. (*Id.* at 589-99). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not

have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2018. (Dkt. 5 at 592). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 5, 2017, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of seizures and epilepsy. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of asthma was non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listing 11.02 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could:

> lift and carry 10 pounds frequently and 50 pounds occasionally; stand and/or walk with normal breaks for eight hours in an eight-hour workday; sit with normal breaks for a total of eight hours in an eight-hour workday; push or pull with the upper or lower extremities within the aforementioned weight restrictions; he must avoid unprotected heights, dangerous machinery, or operation of motor vehicles; he should avoid climbing ladders, ropes, or scaffolds.

(*Id.* at 593). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 597).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cashier, cleaner, and storage facility rental clerk. (*Id.* at 597-98). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 598).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that remand is required because the ALJ improperly evaluated opinion evidence, including the opinions offered by Robert Glover, M.D., Ronald Koenig, M.D., and Nikita Dave, M.D., and that these errors were harmful. (Dkt. 7-1 at 11-20). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the

frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 404.1520c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct.

1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

With respect to the opinion offered by Dr. Glover, Plaintiff maintains that the ALJ erred in finding that opinion only "partially persuasive." (Dkt. 7-1 at 13-16). Dr. Glover completed a Medical Opinion Statement for Plaintiff's seizures in May 2023. (Dkt. 6 at 629-32). Dr. Glover stated that Plaintiff has an average of two seizures per month, but Dr. Glover was not sure when Plaintiff had his last three seizures. (*Id*. at 629). Dr. Glover checked a box "yes," in response to a question asking if Plaintiff was compliant with taking his medications, but then checked another box "yes" in response to the question "[i]f no, does it make a difference in the frequency of seizures?" (*Id*. at 630).

Dr. Glover opined that Plaintiff's seizures would likely disrupt co-workers, that Plaintiff would need more supervision than an unimpaired co-worker, Plaintiff could not work at heights, he could not work with power machines that require an alert operator, he could not operate a motor vehicle, and he could not take a bus alone. (*Id*. at 631). Plaintiff also had associated mental problems, including a short attention span and memory problems. (*Id*.). Plaintiff would not need to take unscheduled breaks during the workday, and he was capable of performing low-stress jobs. (*Id*. at 632). Plaintiff would be absent for about two days per month. (*Id*.).

The ALJ found Dr. Glover's opinion to be "partially persuasive":

> While Dr. Glover is one of the claimant's treating neurologists, I must find that his opinion is only partially persuasive taking into consideration the

> claimant's history of noncompliance with treatment. In his report, Dr. Glover stated that the claimant is compliant with medication and it makes a difference in the frequency of his seizures; however, this does not address the noncompliance evident throughout the record, including Dr. Glover's own treatment reports, which show that the claimant had no neurology follow-up from February 2021 until August 2022, and hospital records reflecting that each of the claimant's instances of seizure requiring emergency intervention were predicated by noncompliance. Furthermore, clinical records do not show any chronic reports of decreased cognitive functioning, or associated evaluation or treatment. However, the specific assessed restrictions regarding environmental factors that the claimant must avoid due to his seizure disorder is supported by the remainder of the evidence, including other medical opinions.

(Dkt. 5 at 597).

It is clear to the Court from this explanation that the ALJ considered the entirety of Dr. Glover's opinion, as well as the consistency and supportability factors. The ALJ largely adopted Dr. Glover's opinion as to the specific environmental limitations required as a result of Plaintiff's seizures—namely, the RFC provides that Plaintiff must avoid unprotected heights, dangerous machinery, or operation of motor vehicles, and also that Plaintiff should avoid climbing ladders, ropes, and scaffolds, and the ALJ explained that such limitations were supported by the record. The ALJ further noted that Dr. Glover's assessment that Plaintiff was compliant with treatment was not supported by the record or consistent with Dr. Glover's own treatment notes, which demonstrated that Plaintiff was not compliant with medications, or consistent in attending appointments. (*See id*. at 597; *see also id*. at 358 (Dr. Glover's treatment note from March 12, 2018, noting that Plaintiff had multiple missed doses of his medication and a history of non-compliance with neurology follow-up appointments, that he had his last seizure one week ago when he ran out of medication, and that Plaintiff "continues to experience seizures mostly due to

noncompliance with medications including multiple missed dosages"); Dkt. 6 at 610 (treatment note from August 22, 2022, noting that the "[p]rimary issue over the last few years has been compliance with appointment and medications," and "[s]imilar issue again today after 4 no shows over 6 months earlier this year"); *see also* Dkt. 5 at 595 (noting that in questionnaire regarding Plaintiff's work-related limitations dated May 2, 2023, Dr. Glover indicated that he had been treating Plaintiff every six months since March 2018, but when Plaintiff's representative requested records from March 1, 2023, through August 10, 2023, the office responded that there were "no dates of treatment as requested")).

Plaintiff takes issue with the ALJ's discussion of his noncompliance with treatment, stating that the ALJ "ignor[ed] periods where Plaintiff was compliant and continued to have seizures," citing to records noting that Plaintiff had seizures despite compliance. (Dkt. 7-1 at 14). Contrary to Plaintiff's implication, the ALJ did not ignore periods when Plaintiff reported that he had been compliant with his medications, but seizures still occurred (*see, e.g.*, Dkt. 5 at 595 (discussing Plaintiff's report that he was mostly compliant with medications)), and several of the records to which Plaintiff cites in support of this argument appear to support the ALJ's conclusion that Plaintiff was not compliant with his medication and treatment regimen.

To that end, the ALJ explained in the written determination that while Plaintiff had an established history of treatment for seizure disorder, the record reflected that he had "a significant history of noncompliance with prescribed treatment," with his emergency room visits precipitated by failing to properly take his medication, or attending his medical appointments. (*See, e.g.*, Dkt. 5 at 594 (discussing emergency department report dated

May 30, 2017, documenting that Plaintiff was taking his medications incorrectly, likely adding to Plaintiff's confusion and possible psychiatric side effects); *id.* (discussing emergency department note dated August 6, 2017, documenting that Plaintiff "has seizures often as he is noncompliant with medications," and at that time had run out of his medications three days prior); *id.* (discussing treatment record from September 24, 2018, which stated that Plaintiff's last visit was in March 2018, and that he had missed several follow-up appointments, and noting that Plaintiff had adjusted his medication on his own, increasing the dose by 50 percent); *id.* (discussing February 19, 2020 treatment note wherein Plaintiff sought emergency treatment for a seizure, and attending physician noted that per his last neurology note, Plaintiff should have been taking two medications, and not just the one medication that Plaintiff reported); *id.* at 595 (discussing November 29, 2020 treatment note, wherein Plaintiff sought emergency treatment for seizures, before which he had run out of one of his seizure medications, and was "unsure of his last dose," and Plaintiff refused to stay for in-patient observation and was discharged against medical advice); *id.* (discussing September 2021 emergency treatment for seizure, where Plaintiff reported taking a lower dose of his medication than prescribed, that he had missed his dose the previous evening, and he stopped taking one of his other medications several months ago, without informing his neurologist); *id.* (discussing that after February 2021, Plaintiff did not return to his neurology office until August 22, 2022, where he reported that he was taking his medication a "majority of the time," but missed doses)).

To the extent there is conflicting evidence in the record regarding Plaintiff's compliance with treatment for his seizures, it is the ALJ's duty to consider and weigh those

discrepancies. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (substantial evidence supported ALJ's disability finding, where the plaintiff testified that he experienced a seizure at least once a month, but this report was inconsistent with medical records showing a seizure every few months or more, and on occasions when he did have a seizure, it was often caused by his failure to take his medication). Further, despite his noncompliance, the RFC accounts for Plaintiff's seizures in the RFC, as it adopts Dr. Glover's opinion regarding Plaintiff's environmental limitations. *See, e.g., Christopher P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-00001 (JGW), 2024 WL 3029432, at *6 (W.D.N.Y. June 17, 2024) (noting that despite Plaintiff's self-report that he was compliant with seizure medications, the record before the court established that plaintiff's seizures were "largely precipitated by apparent noncompliance with medication," and further noting that "[d]espite the evidence related to plaintiff's seizure disorder, revealing that the seizures reduced in frequency when plaintiff was compliant with his prescribed medication regimen, the ALJ still accounted for the seizures in the RFC"). Accordingly, remand is not required based on the ALJ's assessment of the opinion offered by Dr. Glover.

Plaintiff next disputes the ALJ's assessment of the opinion offered by Dr. Koenig, arguing that the ALJ erred in considering the supportability and consistency factors. (Dkt. 7-1 at 16-19). Dr. Koenig testified at Plaintiff's second administrative hearing. Dr. Koenig testified that Plaintiff experienced seizures, and that according to the medical records, Plaintiff had not been compliant with treatment, although it appeared that Plaintiff was

sometimes compliant. (Dkt. 5 at 613-14). Dr. Koenig testified that if Plaintiff had followed treatment and been compliant with appointments and medication, it would have improved his condition as far as the frequency of his seizures, although Dr. Koenig noted that he could not say whether compliance would have totally eliminated Plaintiff's seizures. (*Id.* at 614-15).

Dr. Koenig further testified that, had Plaintiff followed his treatment plan, then his "[r]estrictions would be that of any seizure patient," including "no climbing in high places, no working around moving machinery, no driving, just not being placed in a position where if he had a seizure he could do injury to himself," and also that Plaintiff could lift or carry ten pounds frequently and 50 pounds occasionally, he could perform pushing or pulling motions with the upper and lower extremities within those weight restrictions, and he could stand, walk, or sit with normal breaks over an eight-hour workday. (*Id.* at 615-16). Dr. Koenig further opined that if Plaintiff did not follow treatment, he would miss two days of work per month. (*Id.* at 616).

The ALJ found that Dr. Koenig's opinion was "persuasive":

After review of the medical evidence, I find that the opinion of Dr. Koenig is persuasive as it is supported by a totality of the record, which shows that the claimant has a long history of seizure activity, but also has been regularly observed to be noncompliant with scheduled neurology appointments or medication, either not taking them as prescribed, changing his dosing or frequency without notifying neurology, missing doses entirely, or running out of medication early. The conclusions of Dr. Koenig regarding the

>claimant's restrictions are reasonable if the claimant had been compliant with treatment during the period at issue.

(Dkt. 5 at 596).

It is clear to the Court from this explanation that the ALJ considered the entirety of Dr. Koenig's opinion, as well as the consistency and supportability factors. Specifically, the Court noted that Dr. Koenig's assessment of Plaintiff's compliance was supported by other evidence in the record. Further, the environmental limitations were consistent with those assessed by Dr. Glover. Plaintiff raises briefly and in conclusory fashion that the ALJ failed to consider that Plaintiff's noncompliance was related to his seizures. (*See* Dkt. 7-1 at 15 ("Clearly, noncompliance was related to Plaintiff's impairment")). Notably, the ALJ questioned Dr. Koenig at the administrative hearing about Plaintiff's reasons for non-compliance, and Dr. Koenig opined that overall, based on his review of the treatment record, there were not any acceptable reasons for Plaintiff's not following his treatment regimen. (Dkt. 5 at 614-15). As explained in the written determination, the ALJ credited Dr. Koenig's opinion on this issue. (*Id*. at 596 ("Dr. Koenig also stated that, overall, the claimant's reasons for not following treatment were not acceptable.")). Plaintiff's disagreement on this point does not require remand, particularly given the abundance of evidence in the record indicating that Plaintiff was non-compliant with taking medications and attending his appointments.

Plaintiff also argues that Dr. Koenig's opinion is internally inconsistent, since he opined that Plaintiff would be absent from work for two days per month if he was not compliant with his medication, but he may experience breakthrough seizures even when compliant with medication. (Dkt. 7-1 at 16). A full reading of Dr. Koenig's testimony

dispels any purported inconsistency. As explained above, Dr. Koenig testified that had Plaintiff followed treatment, it would have improved his condition—in that it would cause him to have less seizures—but Dr. Koenig could not say for sure that compliance would completely eliminate his seizures. (*See* Dkt. 5 at 614). Again, the ALJ discussed this testimony in the written determination. (*Id.* at 596 ("Dr. Koenig opined that the claimant's condition would have improved if he had been compliant with his medication; while he could not say the claimant's seizures would have resolved, he stated that they would have certainly reduced in frequency based on the evidence.")). Accordingly, the ALJ's assessment of Dr. Koenig's opinion does not require remand.[2]

Finally, with respect to Dr. Dave's opinion, Plaintiff argues that the "ALJ . . . erred by finding the opinion of the consultative examin[er] partially persuasive, as it was based solely on one examination." (Dkt. 7-1 at 19). Dr. Dave examined Plaintiff on November 12, 2019. (Dkt. 5 at 520). Following an examination, Dr. Dave opined that Plaintiff should "avoid ladders, heights, sharp instruments, and machinery. [Plaintiff] may be benefited from more seated and sedentary activities allowing for safety during seizure. Avoid flashing lights. No limitations for standing, sitting, or walking." (*Id.* at 522). Dr. Dave further found that Plaintiff could lift and carry 20 pounds continuously and 50 pounds occasionally. (*Id.* at 523). Plaintiff could frequently climb stairs and ramps, and frequently

---

[2]    Plaintiff also argues, without further elaboration based on the record, that "[i]n addition, as a non-examining opinion, Dr. Koenig's opinion was inherently less reliable in general." (Dkt. 7-1 at 17). However, it is well-settled that "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016).

balance, and he could have occasional exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, and extreme heat and cold. (*Id*. at 526-27).

The ALJ found Dr. Dave's opinion to be "partially persuasive":

> I also find that the opinion of Dr. Dave is partially persuasive as it is based on personal examination of the claimant; however, the record does not support a conclusion that the claimant has any significant restriction for exposure to respiratory irritants or noise, or that he would have other postural restrictions besides a preclusion for climbing ladders, ropes, or scaffolds. I also find that the claimant has a greater restriction for lifting and carrying on a frequent basis than estimated by Dr. Dave.

(Dkt. 5 at 596).

Plaintiff's position that the ALJ committed an error requiring remand because he found Dr. Dave's opinion to be partially persuasive, despite that Dr. Dave examined Plaintiff on only one occasion, is not supported by the law. It is well-settled that, as a consultative examiner, Dr. Dave's opinion may serve as substantial evidence supporting the RFC. *See Frank T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-500 (WBC), 2021 WL 3635212, at *4 (W.D.N.Y. Aug. 17, 2021) ("the opinion of a consultative examiner may constitute substantial evidence that the ALJ can rely on to determine Plaintiff's RFC"). As explained by the ALJ, Dr. Dave's opinion is consistent with other evidence in the record, including the assessed environmental limitations regarding Plaintiff's avoidance of heights, heavy machinery, and operation of motor vehicles. Accordingly, remand is not required based on the ALJ's evaluation of the opinion offered by Dr. Dave.

Given that the ALJ's evaluation of these medical opinions was proper, the ALJ did not commit any harmful error requiring remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 30, 2025
       Rochester, New York